## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHARLES JACKSON GASCHE, JR., )
DENNIS J. HARRIS, GENE L. )
PETERSON, WILLIAM A. )
SCHOKNECHT and JOHN J. SKIBA, )
individually and on behalf of a Class of all )
others similarly situated, )
                              )   **Case No. 04C 0776**
           **Plaintiffs,**    )
                              )   **Judge David H. Coar**
                              )
**v.**                          )
                              )
**ASWORTH CORPORATION,**     )
                              )
           **Defendant.**    )

FILED

MAY 1 7 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
JUN 0 8 2004

### ASWORTH CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO COUNTS I THROUGH V OF THE COMPLAINT

Defendant Asworth Corporation ("Asworth"), by and through its attorneys, hereby submits its Answer and Affirmative Defenses to Counts I through V of the Complaint filed by Plaintiffs Charles Jackson Gasche, Jr., Dennis J. Harris, Gene L. Peterson, William A. Schoknecht and John J. Skiba individually and purportedly on behalf of a Class of all individuals allegedly similarly situated ("Plaintiffs"). Asworth has filed a separate motion to dismiss with respect to Count VI of the Complaint.

### ANSWER

**PARAGRAPH 1.** In 1982, Braniff Airways, Inc. ("Braniff") went bankrupt, leaving its main pilot pension plan with insufficient assets to provide all promised benefits. After Braniff terminated the plan, its successor used the remaining plan assets to purchase a group annuity contract from Prudential Insurance Company of America ("Prudential") to provide retirement annuities to the former pilots.

    **ANSWER:** Asworth admits that Braniff filed for reorganization under Chapter 11 of the Bankruptcy Code in 1982 and that the main pilot pension plan (the "Braniff A Plan")

did not have sufficient assets to provide all promised benefits at that time. Asworth further

admits that Braniff terminated the Braniff A Plan and that Braniff's successor Dalfort satisfied

all of its obligations to the participants in the Braniff A Plan by purchasing a group annuity

contract from Prudential that provided specifically delineated benefits in the form of retirement

annuities to named annuitants. Except as expressly admitted, Asworth denies all remaining

allegations contained in Paragraph 1.

**PARAGRAPH 2.** This group annuity contract, and another purchased with
the assets of a second pilot pension plan, were and are intended solely for the benefit of the
former plan participants. Braniff's successor has no beneficial interest in them but serves merely
as the nominal contract holder and, under the terms of the contracts, the representatives of the
annuitants.

**ANSWER:** Asworth admits that the named annuitants under the group annuity

contracts were entitled to the benefits of the specifically delineated annuity described in their

individual annuity certificate under the group annuity contracts. Except as expressly admitted,

Asworth denies all remaining allegations contained in Paragraph 2, and specifically denies that

the group annuity contracts grant any further rights to the individual annuitants beyond the

specifically delineated annuity benefits described in their individual annuity certificates.

**PARAGRAPH 3.** In 2001, Prudential converted from a mutual insurance
company to a shareholder-owned company and, as part of this "demutualization" process, paid
substantial compensation to its policyholders and contractholders. As holder of the pilots' group
annuity contracts, Braniff's successor, Asworth Corporation ("Asworth"), received payment of
millions of dollars worth of Prudential stock (the "Demutualization Compensation").

**ANSWER:** Asworth denies that the group annuity contracts are correctly

characterized as "the pilots' group annuity contracts" because the pilots do not hold any interest

in the group annuity contracts beyond the specifically delineated annuity benefits described in

the individual annuity certificates provided pursuant to those contracts. Asworth admits the

remaining allegations contained in Paragraph 3 except to the extent that plaintiffs characterize

the demutualization proceeds as "payment" to Asworth, which characterization Asworth denies.

**PARAGRAPH 4.**     Although the former Braniff pilots are the intended beneficiaries of the group annuity contracts, and although Asworth has no beneficial interest in them, Asworth has decided to keep the Demutualization Compensation for itself, rather than distribute it to the annuitants.

**ANSWER:**     Asworth denies the allegations in Paragraph 4.

**PARAGRAPH 5.**     That decision led to the instant class action suit on behalf of the annuitants to recover the Demutualization Compensation.

**ANSWER:**     Asworth lacks sufficient information or belief to admit or deny the

allegations contained in Paragraph 5 and, on that basis, denies the same.

**PARAGRAPH 6.**     Various equitable doctrines under Illinois State law, including unjust enrichment, require that Asworth pay over the Demutualization Compensation to the former Braniff pilots and their beneficiaries.  Prudential paid the Demutualization Compensation based on the group annuity contracts, contracts that were purchased entirely with the assets of the pilots' pension plans, assets which were intended solely for the benefit of the pilots.  In addition, some of these assets derived from contributions made by the annuitants, and earnings on those contributions. The annuitants are the intended beneficiaries of the group annuity contracts and benefits flowing from those contracts should, as a matter of equity, inure to their benefit.

**ANSWER:**     The allegations in Paragraph 6 state only conclusions of law to

which no response is required.  To the extent the allegations could be construed to state factual

allegations, Asworth denies them.

**PARAGRAPH 7.**     Asworth has no legitimate grounds for keeping the Demutualization Compensation.  It did not pay any of its own money for the group annuity contracts nor did it provide any other consideration for them.  To Asworth, the Demutualization Compensation is a pure windfall.

**ANSWER:**     Asworth denies the allegations contained in Paragraph 7.

**PARAGRAPH 8.**     Braniff's failure to pay the pilots all of their promised pension benefits makes it particularly unjust and unconscionable that Asworth, Braniff's successor, should now keep the Demutualization Compensation.

**ANSWER:**     Asworth denies the allegations contained in Paragraph 8.

**PARAGRAPH 9.**     Should the Illinois State law claims not suffice, plaintiffs assert, in the alternative, a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001-1453.  Guidance provided by the U.S. Department of Labor indicates that where, as here, an employer terminates a pension plan without satisfying all of its

3

obligations to plan participants, and then purchases group annuity contracts, demutualization compensation paid on those contracts constitutes assets of the terminated plan. Because ERISA requires that plan assets be used only for the benefit of plan participants, Asworth has breached its fiduciary duty under ERISA by keeping the Demutualization Compensation for itself.

**ANSWER:** The allegations in Paragraph 9 state only conclusions of law to which no response is required. To the extent the allegations could be construed to state factual allegations, Asworth denies them.

## JURISDICTION AND VENUE

**PARAGRAPH 10.** This Court has diversity jurisdiction under 28 U.S.C. §1332 as the action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000. Plaintiffs' claims to the Demutualization Compensation are common and undivided and thus should be aggregated for purposes of determining the amount in controversy.

**ANSWER:** The allegations in Paragraph 10 state only conclusions of law to which no response is required. To the extent the allegations could be construed to state factual allegations, Asworth admits those factual allegations except to the extent that it denies that plaintiffs have any claim to the Demutualization Compensation.

**PARAGRAPH 11.** In addition, this Court has jurisdiction over plaintiffs' ERISA claim under 28 U.S.C. §1331 and 29 U.S.C. §1132 and supplemental jurisdiction over plaintiffs' Illinois State law claims under 28 U.S.C. §1367(a).

**ANSWER:** The allegations in Paragraph 11 state only conclusions of law to which no response is required. To the extent the allegations could be construed to state factual allegations, Asworth denies them.

**PARAGRAPH 12.** Venue lies in this judicial district under 28 U.S.C. §1391(b)(1) and 29 U.S.C. §1132(e)(2) as Asworth resides in this judicial district.

**ANSWER:** The allegations in Paragraph 12 state only conclusions of law to which no response is required. To the extent the allegations could be construed to state factual allegations, Asworth admits them.

## PARTIES

**PARAGRAPH 13.**   Plaintiff Charles Jackson Gasche, Jr. is a resident and citizen of the State of Florida.  He was employed as a Braniff pilot from 1964 to 1982.

**ANSWER:**   Asworth lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 and, on that basis, denies the same.

**PARAGRAPH 14.**   Plaintiff Dennis J. Harris is a resident and citizen of the State of North Carolina.  He was employed as a Braniff pilot from 1977 to 1982.

**ANSWER:**   Asworth lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 and, on that basis, denies the same.

**PARAGRAPH 15.**   Plaintiff Gene L. Peterson is a resident and citizen of the State of Minnesota.  He was employed as a Braniff pilot from 1977 to 1982.

**ANSWER:**   Asworth lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 15 and, on that basis, denies the same.

**PARAGRAPH 16.**   Plaintiff William A. Schoknecht is a resident and citizen of the State of Texas.  He was employed as a Braniff pilot from 1966 to 1982.

**ANSWER:**   Asworth lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 and, on that basis, denies the same.

**PARAGRAPH 17.**   Plaintiff John J. Skiba is a resident and citizen of the State of Florida.  He was employed as a Braniff pilot from 1966 to 1982.

**ANSWER:**   Asworth lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 17 and, on that basis, denies the same.

PARAGRAPH 18.    On information and belief, Asworth is a corporation incorporated in the State of Nevada and that has its principal place of business in the State of Illinois.

ANSWER:    Asworth admits the allegations contained in Paragraph 18.

## FACTUAL ALLEGATIONS

## THE BRANIFF PILOT PENSION PLANS

PARAGRAPH 19.    Braniff had two pension plans for pilots, a defined benefit plan ("the A Plan") and a defined contribution variable annuity plan ("the B Plan") (together, "the Plans"). The A Plan promised pilots a fixed retirement annuity.

ANSWER:    Upon information and belief, Asworth admits that Braniff had two

pension plans for pilots, a defined benefit plan (the "Braniff A Plan") and a defined contribution

plan (the "Braniff B Plan"). Asworth denies the remaining allegations contained in Paragraph

19.

PARAGRAPH 20.    Prior to 1967, participation in the Plans was voluntary and participating pilots contributed to the Plans with their own after-tax earnings. Accordingly, certain assets of the Plans consisted of contributions from plan participants and earnings on those contributions.

ANSWER:    Upon information and belief, Asworth admits the allegations

contained in Paragraph 20.

PARAGRAPH 21.    Starting in 1967, Braniff made all contributions to the Plans and eligible pilots were enrolled automatically.

ANSWER:    Upon information and belief, Asworth admits the allegations

contained in Paragraph 21.

PARAGRAPH 22.    Each of the plaintiffs in this action was a participant in the A Plan and the B Plan.

ANSWER:    Asworth lacks knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 22 and, on that basis, denies the

same.

**PARAGRAPH 23.**    The assets of the Plans constituted deferred compensation earned by the Braniff pilots.  These assets were intended solely for the benefit of the pilots, to fund their retirements.

**ANSWER:**    Asworth admits that the assets of the Braniff A Plan, a defined

benefit plan, were intended to fund the eventual payment of promised benefits to plan

participants.  Asworth admits that the assets of the Braniff B Plan, a defined contribution plan,

were intended to fund certain future payments to the participants in that plan.

## TERMINATION OF THE PLANS; PURCHASE OF ANNUITY CONTRACTS

**PARAGRAPH 24.**    On May 13, 1982, a day after ceasing operations, Braniff filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Texas ("the Bankruptcy Court").  At the time, the A Plan had 1,966 participants.

**ANSWER:**    Upon information and belief, Asworth admits the allegations

contained in Paragraph 24.

**PARAGRAPH 25.**    Soon thereafter, in a published decision, the Bankruptcy Court determined that the A Plan did "not have adequate assets to pay all participants at promised levels." *In re Braniff Airways, Inc.*, 27 B.R. 222, 226 (Bankr. N.D. Tex. 1982).

**ANSWER:**    Asworth admits the allegations contained in Paragraph 25.

**PARAGRAPH 26.**    Braniff terminated the A Plan effective August 30, 1982.

**ANSWER:**    Asworth admits the allegations contained in Paragraph 26.

**PARAGRAPH 27.**    On December 15, 1983, Braniff changed its name to Dalfort Corporation ("Dalfort").

**ANSWER:**    Asworth admits the allegations contained in Paragraph 27.

**PARAGRAPH 28.**    After the termination of the A Plan, Dalfort used the assets of the A Plan to purchase a group annuity contract from Prudential ("the A Plan Annuity Contract"), to provide retirement annuities to the former A Plan participants.

**ANSWER:**    Upon information and belief, Dalfort took those funds in the

Braniff A Plan together with certain amounts provided by the Pension Benefit Guaranty

Corporation ("PBGC") to purchase a group annuity contract from Prudential to provide

retirement annuities to the former A Plan participants.  Asworth denies the remaining allegations

contained in Paragraph 28.

**PARAGRAPH 29.**    The A Plan Annuity Contract became effective December

30, 1983.

**ANSWER:**    Asworth admits the allegations contained in Paragraph 29.

**PARAGRAPH 30.**    The former A Plan participants are the beneficiaries of the
A Plan Annuity Contract.  As the Bankruptcy Court explained in its decision regarding the A
Plan, "[t]he customary method for distributing the assets [of a terminated plan] is to purchase
commercial annuities . . . . a participant's benefits under the plan are categorized into the
statutory priorities, valued, and then distributed by purchasing an annuity *of which the
participant is the beneficiary*."  *In re Braniff,* 27 B.R. at 226 (emphasis added).

**ANSWER:**    Asworth admits that the former Braniff A Plan participants are

only entitled to the specifically delineated benefits contained in their individual annuity

certificates under the group annuity contract purchased following the termination of that plan.

Asworth further admits that the cited Bankruptcy Court's decision includes the quoted language

set forth in Paragraph 30 and that plaintiffs have added emphasis to that language as noted.

Asworth denies the remaining allegations in Paragraph 30 including the allegation that the

former Braniff A Plan participants have any right in the group annuity contract itself.

**PARAGRAPH 31.**    The annuities provided by the A Plan Annuity Contract are
substantially less than they would have been had the assets of the A Plan with which they were
purchased been sufficient to satisfy all promised benefits.

**ANSWER:**    Asworth lacks knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 31 and, on that basis, denies the

same.

**PARAGRAPH 32.**    Braniff also terminated the B Plan.  Upon termination of
the B Plan, participants were given the option of receiving the funds in their plan accounts as
either a lump sum or as an annuity.  After distributing the lump sum payments to those who
opted for them, Dalfort used the remaining assets of the B Plan to purchase another group
annuity contract from Prudential ("the B Plan Annuity Contract").  The B Plan participants who
opted not to take a lump sum payment are the beneficiaries of the B Plan Annuity Contract.

**ANSWER:**    Asworth admits the allegations contained in Paragraph 32, except that Asworth denies that any former Braniff B Plan participants have any right in the group annuity contract itself.  Asworth affirmatively states that the former Braniff B Plan participants are entitled only to the specifically delineated benefits contained in their individual annuity certificates under the group annuity contract purchased following the termination of that plan.

**PARAGRAPH 33.**    On information and belief, Dalfort did not use any of its own money in making the purchase of the two group annuity contracts.

**ANSWER:**    Asworth denies the allegations contained in Paragraph 33.

## THE ANNUITY CONTRACTS

**PARAGRAPH 34.**    Under the A Plan Annuity Contract, Prudential has provided and continues to provide retirement payments to designated annuitants and contingent annuitants (individuals entitled to receive an annuity for life upon the death of the annuitant).  On information and belief, the B Plan Annuity Contract also provides for payments to designated annuitants and contingent annuitants.

**ANSWER:**    On information and belief, Asworth admits the allegations contained in Paragraph 34.

**PARAGRAPH 35.**    The A Plan Annuity Contract does not provide for any payments to Dalfort or its successors.  Nor, on information and belief, does the B Plan Annuity Contract.

**ANSWER:**    Asworth admits that the Annuity Contracts do not explicitly contemplate any annuity payments to the contractholder.  Asworth affirmatively states that the Annuity Contracts do provide that Dalfort or its successors will be the holders of those contracts.  Moreover, Asworth affirmatively states that the Annuity Contracts do not provide that the annuitants are entitled to demutualization compensation or any other benefit that accrues to the holder of the Annuity Contracts.

**PARAGRAPH 36**.    The A Plan Annuity Contract describes Dalfort, the contractholder, merely as the "representative" "of each person…with an interest in the Plan." The A Plan Annuity Contract further provides that, should the contractholder cease to exist and

have no successor, the annuity contract "shall nevertheless remain in full force and effect." On information and belief, the B Plan Annuity Contract contains identical or similar language.

**ANSWER:** Asworth admits that the A Plan Annuity Contract and B Plan Annuity Contract contain language of the sort alleged in Paragraph 36. Asworth further states that the Annuity Contracts speak for themselves. Except as specifically admitted, Asworth denies the remaining allegations contained in Paragraph 36.

**PARAGRAPH 37.** When Dalfort purchased the group annuity contracts, Prudential was a mutual insurance company, owned by its member policyholders and contractholders. By purchasing the contracts, Dalfort became a Prudential member and obtained certain membership rights. These membership rights could not be sold and had no market value.

**ANSWER:** Asworth lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in Paragraph 37 that the membership rights could not be sold and had no market value and, on that basis, denies such allegation. Asworth admits the remaining allegations contained in Paragraph 37.

**PARAGRAPH 38.** On February 21, 1995, Dalfort changed its name to Asworth.

**ANSWER:** Asworth admits the allegations contained in Paragraph 38.

## PAYMENT OF THE DEMUTUALIZATION COMPENSATION

**PARAGRAPH 39.** In October 2001, the New Jersey Department of Banking and Insurance approved a reorganization plan adopted by Prudential, under which Prudential converted from a mutual insurance company to a publicly traded stock insurance company owned by shareholders. Pursuant to Prudential's reorganization plan, the membership rights of its policyholders and contractholders were extinguished, and Prudential paid them compensation, either in cash, stock, or credits on their existing policies.

**ANSWER:** Upon information and belief, Asworth admits the allegations contained in Paragraph 39 except to the extent that plaintiffs characterize the demutualization proceeds as "payments" to Asworth, which characterization Asworth denies.

**PARAGRAPH 40.** On Information and belief, Prudential used certain factors to calculate the amount of demutualization compensation to be paid on a group annuity contract that was purchased with the assets of a terminated pension plan. These factors included the past,

and expected future, investment performance of the assets that were used to purchase the contract, as well as the mortality rate and retirement rate of the annuitants. The identity, or even continued existence, of the group contractholder was not a factor.

**ANSWER:** Asworth lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 40 and, on that basis, denies the same.

**PARAGRAPH 41.** On information and belief, in January 2002, Asworth received the Demutualization Compensation, which consisted of Prudential stock then valued at approximately $9 million. On information and belief, approximately $8 million worth of the Demutualization Compensation was paid by Prudential based on the A Plan Annuity Contract ("the A Plan Demutualization Compensation"), and the balance was paid based on the B Plan Annuity Contract. On information and belief, Asworth received the Demutualization Compensation in this District. On information and belief Asworth continues to possess the Demutualization Compensation.

**ANSWER:** Asworth admits the allegations contained in Paragraph 41 except to the extent that plaintiffs characterize the demutualization proceeds as "payments" to Asworth, which characterization Asworth denies.

**PARAGRAPH 42.** On information and belief, since January 2002, Asworth has received dividends from Prudential based on Asworth's possession of the Demutualization Compensation. On information and belief, Asworth continues to possess these dividends.

**ANSWER:** Asworth admits the allegations contained in Paragraph 42.

**PARAGRAPH 43.** During its reorganization, Prudential issued a guide to its group policyholders and contractholders. In it, Prudential warned of the legal risk faced by group annuity contractholders that chose to keep the demutualization payments for themselves:

> Some Prudential group contracts were issued to fund plans that were at one time subject to ERISA but are now terminated. These contracts include termination annuities. Because it is not clear under the relevant authorities how demutualization compensation attributable to a terminated plan's annuity contract should be treated, you may incur less risk of a challenge if you treat the compensation as a "plan asset" and use it to provide enhanced benefits to the plan's former participants whose benefits are provided under an annuity. Other uses of the compensation could involve more risk of challenge. If you conclude that the demutualization compensation need not be treated as an ERISA

11

plan asset, the disposition of the compensation may nonetheless be
subject to constraints under state law. (Footnote omitted).

**ANSWER:**    Asworth admits that Prudential issued a guide to its policyholders

and contractholders that contained the language quoted in Paragraph 43.  Except as expressly

admitted, Asworth denies the remaining allegations contained in Paragraph 43.  Asworth

specifically denies that the language quoted in Paragraph 43 is an accurate or binding statement

of the law.  Asworth further specifically denies that the language quoted in Paragraph 43 had any

legal effect or conveyed any rights to the Plaintiffs.

**PARAGRAPH 44.**    In December 2002, the Air Line Pilots Association,
International ("ALPA"), a labor union that formerly served as bargaining representative of
Braniff's pilots, demanded that Asworth turn over the Demutualization Compensation to the
former Braniff pension plan participants.

**ANSWER:**    Asworth admits the allegations contained in Paragraph 44, except

that Asworth specifically denies that ALPA's demand had any legal effect or granted any rights

to the Plaintiffs in this case.

**PARAGRAPH 45.**    To date, despite Prudential's legal warning and ALPA's
demand, Asworth has decided to keep the Demutualization Compensation for itself.

**ANSWER:**    Asworth admits only that it retains the Demutualization

Compensation which Prudential gave it and to which it is entitled as the contractholder of the

Annuity Contracts.   Except as expressly admitted, Asworth denies the remaining allegations

contained in Paragraph 45 and specifically denies that Prudential's "warning" and ALPA's

demand in any way created or expanded the rights allegedly held by the Plaintiffs in this case.

## CLASS ACTION ALLEGATIONS

**PARAGRAPH 46.**    Plaintiffs bring this action as a class action under Federal
Rule of Civil Procedure 23.

**ANSWER:** Asworth admits only that the Plaintiffs seek to certify a class action under Federal Rule of Civil Procedure 23. Asworth denies that Plaintiffs are entitled to that certification.

**PARAGRAPH 47.** The Class is defined as anyone currently receiving or entitled in the future to receive annuity payments under either the A Plan Annuity Contract or the B Plan Annuity Contract.

**ANSWER:** Asworth admits only that the Plaintiffs seek to certify a class action under Federal Rule of Civil Procedure 23. Asworth denies that Plaintiffs are entitled to that certification.

**PARAGRAPH 48.** On information and belief, the Class consists of at least several hundred members, making it so numerous that joinder of all members is impracticable.

**ANSWER:** Asworth admits only that the Plaintiffs seek to certify a class action under Federal Rule of Civil Procedure 23. Asworth denies that Plaintiffs are entitled to that certification and that joinder of all purported class members is impracticable.

**PARAGRAPH 49.** There are questions of law and fact common to the Class. The principal legal issue in this action, whether Asworth has an obligation to turn over the Demutualization Compensation to the members of the Class, is common to all class members.

**ANSWER:** Asworth admits only that the Plaintiffs seek to certify a class action under Federal Rule of Civil Procedure 23. Asworth denies that Plaintiffs are entitled to that certification and that the principal legal issue in this action is common to all purported class members.

**PARAGRAPH 50.** The claims of the named plaintiffs are typical of the claims of the Class. Each named plaintiff is a former Braniff pilot, a former A Plan and B Plan participant and an annuitant under the A Plan Annuity Contract. The claims of the plaintiffs, that Asworth has an obligation to turn over the Demutualization Compensation to the Class, are shared by all members of the Class.

**ANSWER:** Asworth admits only that the Plaintiffs seek to certify a class action under Federal Rule of Civil Procedure 23. Asworth denies that Plaintiffs are entitled to

that certification and that the claims of the named plaintiffs are typical of the claims of the

purported class.

> **PARAGRAPH 51.**   The named plaintiffs will fairly and adequately protect the
interests of the Class.  Each has agreed to serve as a plaintiff and to work diligently in
representing the Class.

> **ANSWER:**   Asworth admits only that the Plaintiffs seek to certify a class

action under Federal Rule of Civil Procedure 23.  Asworth denies that Plaintiffs are entitled to

that certification.  Asworth lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the remaining allegations contained in Paragraph 51 and, on that basis, denies

the same.

> **PARAGRAPH 52.**   The prosecution of separate actions by individual members
of the Class would create a risk of inconsistent or varying adjudications with respect to
individual members of the Class.  In addition, adjudications with respect to individual members
of the Class would as a practical matter be dispositive of the interests of the other members of the
Class or substantially impair or impede their ability to protect their interests.

> **ANSWER:**   Asworth admits only that the Plaintiffs seek to certify a class

action under Federal Rule of Civil Procedure 23.  Asworth denies that Plaintiffs are entitled to

that certification.

> **PARAGRAPH 53.**   By refusing to turn over the Demutualization
Compensation to the Class, Asworth has acted or refused to act on grounds generally applicable
to the Class.

> **ANSWER:**   Asworth admits only that the Plaintiffs seek to certify a class

action under Federal Rule of Civil Procedure 23.  Asworth denies that Plaintiffs are entitled to

that certification.

> **PARAGRAPH 54.**   Questions of law or fact common to members of the Class
predominate over any questions affecting only individual members.  The predominant question,
common to all Class members, is whether Asworth must turn over the Demutualization
Compensation to the Class.

**ANSWER:**     Asworth admits only that the Plaintiffs seek to certify a class action under Federal Rule of Civil Procedure 23.  Asworth denies that Plaintiffs are entitled to that certification.

**PARAGRAPH 55.**    A class action is thus superior to other available methods for fair and efficient adjudication of the controversy.

**ANSWER:**     Asworth admits only that the Plaintiffs seek to certify a class action under Federal Rule of Civil Procedure 23.  Asworth denies that Plaintiffs are entitled to that certification.

## LEGAL CLAIMS

## COUNT I – UNJUST ENRICHMENT UNDER ILLINOIS STATE LAW

**PARAGRAPH 56.**    Plaintiffs restate and incorporate herein by reference the allegations in paragraphs 1 through 55.

**ANSWER:**     Asworth incorporates its responses to the allegations of Paragraphs 1 through 55 as though fully set forth herein.

**PARAGRAPH 57.**    Asworth has been enriched by the Demutualization Compensation and has retained the enrichment to the plaintiffs' detriment and against fundamental principles of justice, equity and good conscience.

**ANSWER:**     Asworth admits only that the value of its membership rights in Prudential increased upon conversion of Prudential from a mutual insurance company to a stock insurance company.  Except as expressly admitted, Asworth denies the remaining allegations contained in Paragraph 57 and specifically denies that it has unjustly retained the Demutualization Compensation to the detriment of the Plaintiffs.

**PARAGRAPH 58.**    Asworth has been enriched because, as a result of the payment of the Demutualization Compensation, it has assets with a market value of millions of dollars which it did not previously have and for which it did not pay.

**ANSWER:**     Asworth denies the allegations contained in Paragraph 58.

**PARAGRAPH 59.**    Asworth's retention of the Demutualization Compensation is to the plaintiffs' detriment, since it deprives them of valuable assets which would otherwise be theirs.

**ANSWER:**    Asworth denies the allegations contained in Paragraph 59.

**PARAGRAPH 60.**    It is unjust for Asworth to retain the Demutualization Compensation.  Prudential paid the Demutualization Compensation based on the group annuity contracts.  Asworth has no beneficial interest in those contracts.  The annuitants are the intended beneficiaries of the annuity contracts and so should receive any benefits flowing from those contracts.  Neither of the group annuity contracts provides for, or contemplates, any payment by Prudential to Asworth.

**ANSWER:**    Asworth admits only that the group annuity contracts do not specify who should receive Demutualization Compensation.  Except as expressly admitted, Asworth denies the remaining allegations contained in Paragraph 60.

**PARAGRAPH 61.**    Asworth's role in regard to the group annuity contracts is and has been merely that of a representative of the interests of the annuitants.  Indeed, the Demutualization Compensation would have been due even if Asworth no longer existed and had no successor.

**ANSWER:**    Asworth denies the allegations contained in Paragraph 61.

**PARAGRAPH 62.**    Neither Asworth nor its predecessors paid its own money or provided any other compensation to obtain the group annuity contracts.  The consideration for the group annuity contracts came exclusively from the assets of the terminated Braniff pilot pension plans, assets which constituted deferred compensation earned by, and intended solely for the benefit of, the plan participants.  The amount of the Demutualization Compensation reflected, among other factors, the past and expected future investment performance of the assets that came from the terminated pilot pension plans.  Moreover, some portion of the plan assets consisted of direct after-tax contributions made by Braniff pilots before 1967, and earnings thereon.

**ANSWER:**    Upon information and belief, some portion of the Braniff A Plan assets consisted of direct after-tax contributions made by Braniff pilots before 1976, and earnings thereon.  Asworth lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning the amount of the Demutualization Compensation and, on that basis, denies the same.  Asworth denies the remaining allegations contained in Paragraph 62.

**PARAGRAPH 63.**    It is particularly unjust for Asworth to retain the Demutualization Compensation because the participants in the A Plan did not receive all of their

promised benefits when Braniff went bankrupt in 1982. Now that Braniff's successor has received an unexpected and unearned windfall in the form of the Demutualization Compensation, justice dictates that it be used to help make the former pilots whole.

> **ANSWER:** Asworth denies the allegations contained in Paragraph 63.

## COUNT II – MONEY HAD AND RECEIVED UNDER ILLINOIS LAW

> **PARAGRAPH 64.** Plaintiffs restate and incorporate herein by reference the allegations in paragraphs 1 through 55.

> **ANSWER:** Asworth incorporates its responses to the allegations of Paragraphs 1 through 55 as though fully set forth herein.

> **PARAGRAPH 65.** Asworth received and has the Demutualization Compensation. For the reasons set forth above, the Demutualization Compensation in equity and good conscience belongs to the members of the Class.

> **ANSWER:** Asworth admits that it received and now holds the Demutualization Compensation. Asworth submits that it cannot respond to the ambiguous allegation contained in the second sentence of Paragraph 65, which references "the reasons set forth above," except to say that Asworth incorporates its responses to the above allegations as though fully set forth herein. Except as expressly admitted, Asworth denies the remaining allegations of Paragraph 65 and specifically denies that the members of the alleged class are entitled in either law or equity to the Demutualization Compensation.

## COUNT III – RESULTING TRUST UNDER ILLINOIS LAW

> **PARAGRAPH 66.** Plaintiffs restate and incorporate herein by reference the allegations in paragraphs 1 through 55.

> **ANSWER:** Asworth incorporates its responses to the allegations of Paragraphs 1 through 55 as though fully set forth herein.

> **PARAGRAPH 67.** The payment of the Demutualization Compensation created a resulting trust of which Asworth is trustee and the members of the Class are the beneficiaries.

**ANSWER:**   The allegations in Paragraph 67 state only conclusions of law to which no response is required.  To the extent the allegations could be construed to state factual allegations, Asworth denies them.

**PARAGRAPH 68.**   The resulting trust arose because, while the group annuity contracts are in Dalfort's name, the consideration used to purchase them were the assets of the pilots' pension plans.  These assets constituted deferred compensation earned by the Braniff pilots and intended solely to pay for their retirements.  Some portion of the assets even consisted of direct after-tax contributions made by the pilots before 1967, or earnings thereon.  The use of the pension plan assets, which would otherwise have funded their retirements, to purchase the group annuity contracts constituted a detriment to the members of the Class.

**ANSWER:**   Asworth admits only that certain assets surviving the termination of the Braniff pension plans consisted of at least: (1) deferred compensation earned by Braniff pilots that Braniff intended prior to the termination of the plan to pay for specific retirement benefits; and (2) direct after-tax contributions made by the pilots before 1967, or earnings thereon.  Asworth denies the remaining allegations contained in Paragraph 68.

**PARAGRAPH 69.**   As trustee of the resulting trust, Asworth has an obligation, for the reasons set forth above, to turn over the Demutualization Compensation to the members of the Class.

**ANSWER:**   Asworth denies the allegations contained in Paragraph 69.

## COUNT IV – CONSTRUCTIVE TRUST UNDER ILLINOIS LAW

**PARAGRAPH 70.**   Plaintiffs restate and incorporate herein by reference the allegations in paragraphs 1 through 55.

**ANSWER:**   Asworth incorporates its responses to the allegations of Paragraphs 1 through 55 as though fully set forth herein.

**PARAGRAPH 71.**   The payment of the Demutualization Compensation created a constructive trust of which Asworth is trustee and the members of the Class are the beneficiaries.

18

**ANSWER:** The allegations in Paragraph 71 state only conclusions of law to which no response is required. To the extent the allegations could be construed to state factual allegations, Asworth denies them.

**PARAGRAPH 72.** Asworth stands in a relationship of trust with the member of the Class because, under the terms of the group annuity contracts, it is their representative. For the reasons set forth above, Asworth abused this relationship when it refused to turn over the Demutualization Compensation to the Class members.

**ANSWER:** The allegations in Paragraph 72 state only conclusions of law to which no response is required. To the extent the allegations could be construed to state factual allegations, Asworth denies them.

### COUNT V – BREACH OF FIDUCIARY DUTY UNDER ILLINOIS LAW

**PARAGRAPH 73.** Plaintiffs restate and incorporate herein by reference the allegations in paragraphs 1 through 55.

**ANSWER:** Asworth incorporates its responses to the allegations of Paragraphs 1 through 55 as though fully set forth herein.

**PARAGRAPH 74.** As their representative under the group annuity contracts, Asworth owed the members of the Class a fiduciary duty under Illinois State law. Asworth received the Demutualization Compensation solely in its representative and fiduciary capacity. By retaining the Demutualization Compensation, Asworth retained profits gained as a result of the fiduciary relationship and thereby breached its fiduciary duty.

**ANSWER:** The allegations in Paragraph 74 state only conclusions of law to which no response is required. To the extent the allegations could be construed to state factual allegations, Asworth denies them.

### AFFIRMATIVE DEFENSES

As and for its affirmative defenses, Asworth alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiffs' alleged claims, and each of them, are barred because they fail to state a claim on which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiffs' claims for relief, and each of them, are barred by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

### (Laches)

Plaintiffs' claims for relief, and each of them, are barred by the doctrine of laches.

### FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

Plaintiffs' claims for relief, and each of them, are barred by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiffs' claims for relief, and each of them, are barred as against Asworth by the doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

Plaintiffs' claims for relief, and each of them, are barred as against Asworth by the doctrine of accord and satisfaction.

## SEVENTH AFFIRMATIVE DEFENSE

### (Ratification/Acquiescence)

Plaintiffs' claims for relief, and each of them, are barred because Plaintiffs acquiesced in, acknowledged, ratified, and/or consented to the alleged acts, omissions, or conduct, if any, of Asworth. In particular, Plaintiffs acquiesced in Asworth's acts, omissions or conduct (1) because any such acts, omissions or conduct were authorized by, and/or permitted under, the bankruptcy plan; and/or (2) because Plaintiffs accepted, failed to oppose, failed to object to, and/or consented to Asworth's purchase of the Annuity Contracts pursuant to the bankruptcy plan and its retention of the membership rights as a contractholder of those annuity contracts.

The pleading of the defenses described above shall not be construed as an undertaking by Asworth of any burden that would otherwise be the responsibility of Plaintiffs. The inclusion of any defense herein is not an admission that such defense would be waived if not included. Additionally, the omission herein of certain other defenses does not waive Asworth's right to assert those defenses in the future.

WHEREFORE, Asworth respectfully requests that this Court enter judgment in its favor, dismiss Counts I through V of the Complaint with prejudice, award Asworth the costs and fees that it has incurred in the defense of this matter, and grant such further relief as the Court deems proper.

May 17, 2004                                    ASWORTH CORPORATION

                                                _____
                                                One of the Attorneys for Asworth
                                                Corporation

                                                Mark S. Mester
                                                Matthew W. Walch
                                                LATHAM & WATKINS LLP
                                                233 S. Wacker Drive
                                                Sears Tower, Suite 5800
                                                Chicago, IL 60606
                                                (312) 876-7700

## CERTIFICATE OF SERVICE

I, Matthew W. Walch, an attorney, hereby certify that I caused copies of the foregoing ASWORTH CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO COUNTS I THROUGH V OF THE AMENDED COMPLAINT to be served by hand delivery upon

> Stanley Eisenstein
> KATZ, FRIEDMAN, EAGLE, EISENSTEIN, & JOHNSON
> 77 W. Washington Street, Suite 2000
> Chicago, IL 60602-2904

and served by mail upon

> Thomas N. Ciantra
> Peter D. DeChiara
> COHEN, WEISS AND SIMON LLP
> 330 West 42nd Street
> New York, NY 10036-6976

Dated: May 17, 2004

_____
Matthew W. Walch